Welcome to the United States Court of Appeal for the Fifth Circuit. We have only two cases to be argued before this panel this afternoon. So I'll call the first case for today, which is the United States of America v. Rodolfo Rodriguez-Leos. I'll hear first from Mr. Scott Martin. May it please the Court, my name is Scott Martin and I represent Mr. Rodriguez in this appeal of the 50-month sentence that he received upon his conviction for being an alien with a non-immigrant visa in possession of ammunition. His appeal concerns the sentencing court's application of the attempt guideline, which is guideline section 2X1.1. In this case, because Mr. Rodriguez knew that the ammunition he possessed would be used in connection with another offense, namely exporting ammunition without a license, the district court applied the cross-reference in subsection C1A of the firearms guideline, which directs the use of the attempt guideline, which is 2X1.1, if the resulting offense level is greater than previously determined. Mr. Rodriguez concedes that the cross-reference applies in his case and that the base offense level is 26. His sole argument on appeal is that the district court erred in denying him a three-level attempt reduction under guideline section 2X1.1B1. That three-level reduction applies unless the defendant completed all the acts he believed necessary for successful completion of the substantive offense or the circumstances demonstrate that he was about to complete all such acts but for apprehension or interruption by some similar event beyond his control. What does that two-word phrase, about to, mean? About to complete? Well, the non-exhaustive considerations that have been given to us in the Soto case and Wascom say that there's a temporal aspect to this. A sentencing court should consider the temporal frame of the scheme and the amount of time the defendant would have needed to finish his plan had he not been interrupted. As the completion of the offense becomes more imminent, the reduction will become less appropriate. There's also another aspect of this standard, which is that in Soto the court said that in order to support a denial of the reduction under the guideline, the circumstances must demonstrate that the balance of the significant acts completed and those remaining tips towards completion of the substantive offense. This requires that district court consider the quality of the completed and remaining acts, not simply the relative quantities of those acts. So in essence, this gives you a three-level discount for being some distance from completion of the substantive offense. And the controlling case is United States v. Soto. In Soto, just like here, the defendant was paid to purchase ammunition and did so knowing that it would be smuggled illegally to Mexico. And in Soto, like here, the defendant was arrested prior to the illegal transfer and eventual smuggling into Mexico. Soto actually had the ammunition in his car when he was stopped over a traffic violation. And on appeal, this court held the district court erred in denying Soto a three-level attempt reduction under 2X1.1B1 because there was no evidence that he was on the verge of delivering the ammunition to his co-conspirator for smuggling to Mexico. All Soto had done was buy the ammunition and put it in his car. There was no evidence that Soto was en route to deliver the ammunition when he was pulled over. In Mr. Rodriguez's case, the completion of the substantive offense, which is exporting ammunition, was even less imminent than it was in Soto. Mr. Rodriguez admitted to agents that a man named El Chivo had given him money to buy the ammunition, as he had done on two prior occasions, and that Mr. Rodriguez then bought it at the Academy Sports Store and stashed the ammunition in the bushes outside a friend's house. Why isn't Torres-Vazquez the more instructive case? Torres-Vazquez was an alien transporting case, an unpublished decision where there was very little analysis, and said that all that was left there was remaining to complete the substantive offense was to actually transport the aliens across, and it was a completed offense. Here, like in Soto, Mr. Rodriguez was not en route to deliver the ammunition. In fact, he was shopping at an auto parts store in Hidalgo after he had stashed the ammunition outside a friend's house in McAllen. And in fact, because he had stashed it there, he did not even have the ammunition with him when he was approached by law enforcement officers at the auto parts store. So the delivery was even less imminent than it was in Soto. There's also no evidence that prior to being stopped at that store that he had actually received a phone call from this man, El Chivo, the goat, that's what they call him, instructing him to perform this significant act of delivering a man, the ammunition to a man who would be in a Dodge Caliber at a Whataburger in Hidalgo for smuggling to Mexico, which is what happened the two previous occasions. The district court certainly didn't make that finding, and this court is not the one to make factual findings like that in the first instance, that there had actually been a call. Now, the government makes a lot of this transcript that Mr. Rodriguez submitted to the district court at sentencing, and there's some confusion about whether during the field interview with the agent at the auto parts store, whether there was a call that came in from somebody from Reynosa. But even the government concedes that it's unclear if anybody actually was calling at that time, or if it was El Chivo. So we don't even know who was calling. It very well could be that in this conversation, Mr. Rodriguez was giving the agent permission to answer his phone in the future if a call came in from Reynosa so that he could speak to El Chivo or anyone else who called. But regardless of what happened with that call, the remainder of the acts to be completed by Mr. Rodriguez and others were so significant that the three-level enhancement reduction should apply here. First, El Chivo would have to call and instruct Mr. Rodriguez to deliver the ammunition to the man in the blue Dodge Caliber for smuggling to Mexico, not tell him to wait or to call it off completely. We don't know what he would have said. Even if that was him calling, we don't know what he would have said. Then, Mr. Rodriguez would have to retrieve the ammunition from his friend's house in McAllen. Now, bear in mind, he was in Hidalgo when he was stopped. He'd have to go to McAllen and retrieve the ammunition. Then he had to go deliver it to somebody, likely a man. I didn't check that. What's the distance on that between Hidalgo and… They border one another. Hidalgo is closer to the bridge. And then you go north. Then you're into McAllen. I don't know what the mileage is, Your Honor. And that's not in the record, what the mileage was. But he would have to go… But it's on Google. It is, Your Honor. It's on Google. It could be Google. But he would still have to go. Then the man in the blue cowlitter would have to actually either smuggle it himself or recruit someone to smuggle it. PSR paragraph 10 says that he would have to either do it or recruit someone. These circumstances do not demonstrate that the balance of the significant acts completed and those remaining tipped towards completion of the substantive offense of exporting ammunition without a license or that completion of the substantive offense was imminent. And for those reasons, Justice Ensoto, this court should find that the district court erred in not applying the three-level reduction. Can we talk about preservation? Yes, Your Honor. Whether we're doing it for plain error or clear. If we were doing it for plain error, are you out of luck? Do you lose? Your Honor, this is a factual determination. And this court has held that errors of fact that are capable of being resolved at district court can never be plain error. Our position is that the error was preserved. In PSR paragraph 21, if you look at what it says, which the district court adopted, the probation officer identified the substantive offense as exportation of ammunition without a required validated export license and also wrote, quote, pursuant to guideline section 2X1.1B1, a decrease is not warranted as the defendant completed all the acts necessary and but for the apprehension was able to complete all the acts. In his written objection to that paragraph, Mr. Rodriguez wrote that, quote, there is no evidence that he attempted exportation of ammunition. And he also wrote that it can't be said that he completed all necessary acts under guideline section 2X1.1A. Now that looks like it must have been a typo, but he's using the language of 2X1.1B. So this written objection, which used this language, was sufficiently specific to alert the district court to the nature of the error being raised here. Similar to what happened in El Cano? I can't recall the exact facts of El Cano, but I do think it's similar to the facts in El Cano. In El Cano, there was a written objection, a misstatement about the language, which is what we have here. He referenced one statute but then used the language from another part of the statute. That would be the same situation, Your Honor. And there was no requirement that Mr. Rodriguez reiterate his objection orally. Was he objecting to the omission of the three-level decrease? Or was he objecting to the base-level increase? He was objecting to everything in that paragraph. He was objecting to the four-level increase under the firearms guideline for having knowledge that the ammunition be transported. He was objecting to whether the cross-reference even applied because he was contending then that he did not have knowledge that where the ammunition was going. And we've conceded on appeal that, because the district court made that finding, that those are the facts for appeal, that he knew the ammunition was headed for Mexico. But in addition, he was also objecting to the lack of a three-level decrease under 2X1.1B by using that language in his written PSR objection. And as I said before, there was no requirement to reiterate it orally. We know that from U.S. Would his role in all this be complete when he delivered, handed off the ammunition in the Whataburger parking lot? Is that it for him? Had he been instructed to do so, and had he retrieved the ammunition and delivered it to a man at a Whataburger restaurant, his role would be done. That would be the final act? It would have been the completed act for him. Now, it wouldn't have been the completion of the substantive offense of exporting ammunition to Mexico because that man would then have to recruit somebody or do it himself, actually take the ammunition across. So the substantive offense was actually the exporting, not the attempt or the conspiracy. And that's not complete until the ammo crosses the border. That's correct, Your Honor. Now, let's say he had been pulled over with the ammunition in his car after receiving instructions from El Chivo and was on his way to the Whataburger and got arrested. That might be enough to deny him the three-level decrease because that would truly be imminent. But here, the nature and number of acts that needed to be completed were just too many to support the denial of the three-level reduction. Unless there are any further questions, Your Honor, I'll save my time for rebuttal. Thank you. Ms. Maness. Thank you, Your Honor. And may it please the Court, Audrey Maness on behalf of the United States. There was no error in the sentence imposed by the district court below, and therefore this court should affirm. As defense counsel has acknowledged, Mr. Rodriguez is not disputing that his illegal possession of ammunition was connected to another offense, the illegal exportation of ammunition. As a result, he also does not dispute, as he did in the district court, that the cross-reference under 2K2.1C applies and that the resulting base level is 26. The only issue is whether he's entitled to an additional three-level reduction under 2X1.1B. He is not. As this Court's aware, that provision provides for a three-level reduction in cases of conspiracy, attempt, or solicitation. But it does not provide for that reduction when the defendant has completed all of the acts necessary on his part for successful completion of the offense, and it also does not provide for the reduction when the defendant is about to complete all of the acts necessary on his part. It's that latter part that provides, that applies here. The defendant was about to complete all of the acts necessary on his part. What's your definition of about to? It's, again, as defense counsel mentioned, this is a very fact-specific inquiry that doesn't lend itself to a precise standard, as this Court said in United States v. Wascom. But here we know from unrebutted and undisputed evidence of record that this is a same-day offense. We know that he's done this twice before. Well, we know that before it happened on the same day. That's right, Your Honor. But what we do know is here he's several steps removed from completing what his participation is in this offense. I would say he's two steps removed, Your Honor. All right, let's count. Okay. He has to first receive and accept a phone call from El Chivo. Correct. That would be one step. Correct. And then he has to retrieve the ammo from where he stashed it at the friend's house. That is true, yes. Two steps. You agree? I'm with you, yes. All right. And then he has to deliver that and relinquish his possession of it to somebody who will be identified in the phone call that he's got to take it to in the past that's been the Whataburger. He's got to take it there. Three steps? I'll go with you on three steps, yes. All right. However, I would say also he's already completed more steps than three when he's apprehended in this case. He has received a call. No, but what Waxman says is we don't look just at the quantity. But also the quality. Quality. Yes. All right. But I think quantity is a consideration as well. He's still in Reynosa, Mexico. He's, step one, he's picked up money from El Chivo whether it's been dropped off at his place of business or picked up on the bridge. Step two, he's crossed over into the United States. He's purchased the ammunition and then he's stored it for safekeeping while he waits for that phone call. And that's where we cross over into the uncompleted steps. So five steps completed at the point he's apprehended. And we know from the record that he's done this before and he's done it within the same day. Indeed, within a few hours of collecting the money, crossing the border, purchasing the ammo, waiting for the call, dropping off the ammunition at the Whataburger. And that's what distinguishes this case from Soto. In Soto, there was just no evidence on the record at all of, even though there had been a previous exchange. Well, in Soto, he had had the ammunition for three days, hasn't he? Three days. Absolutely, yes. So then that seems to me the argument that that transaction was more imminently completed than one which had just begun on the same day. Well, I disagree, Your Honor, because in Soto there was no evidence of previous transactions and there was no evidence on the record that he was expecting a call or he had made any sort of arrangements for drop-off or transfer. Here, we have... There's one difference. The other difference in Soto is Soto had the drugs, which he did at the time of the arrest. Here, he had to go get it from someplace else. He didn't have possession of it, which is one of those very... I mean, he can't deliver what he doesn't have. That's true, Your Honor. However... So that's a critical step that he had not yet taken. Yes, whether it's a five-minute drive... Well, he can't deliver it if he doesn't have it. You agree with that? I do agree with that. He would have to spend whatever, and we don't know what the exact distance is, a five-minute drive, a 15-minute drive, to go pick up the ammunition from the bushes at his friend's house. But we know... And how long it was. Is it five minutes from one of these towns? We don't... Again, as Defense Counsel noted, they're towns that border each other, and so we don't know if the friend's house is right on the border of McAllen and Hidalgo or if it's within McAllen. But it's relatively close. It's not up in... Amel's not up in Houston. We know that much. But we also know from the previous offenses that he's done this within the same day. He expects to complete it that day. In fact, when he wrote his letter of accepting responsibility to the district court, he said in that letter, El Chivo gave me $200 so I could purchase the box of bullets that day. When I got to Academy, I was supposed to receive a call from El Chivo so I could give the ammunition to people I didn't know, only that they were from the McAllen area. Then I got stopped by agents from the police. That's in the record at 272. That sounds pretty imminent. He's expecting to deliver that ammunition today. In Soto, there's no plans for delivery. In fact, Mr. Rodriguez, from what we can tell from the record, is expecting to deliver it again to the Whataburger because there's an established timeline. There's an established delivery protocol. I pick up the ammo,  I take it to Whataburger. We don't have those facts in Soto. But we don't have the phone call either, do we? We do not have the phone call yet here. And there is some suggestion in the record that there was a phone call during the field interview. But we do, as Mr. Martin noted, we acknowledge that that's unclear. But that's where plain error comes in. Had this been appropriately raised in the district court, the district court may have been able to resolve this factual issue. They may have been able to resolve the distance between Hidalgo and McAllen. But the objection was not properly preserved. And that's why plain error applies. There's factual issues here that cannot be resolved because... You're saying that when he used the language from 2X1.1B about to complete, when he used that language from that guideline, that wasn't sufficient to put the district court on notice about the nature of his objection? No, Your Honor. He makes a passing reference and uses that language from 2X1.1B. However, his objection... You call it a passing reference. I do, because if you read the entirety of the objection, which is a paragraph long, his focus is very much on, I didn't know this was going to Mexico. We shouldn't even look at the cross-reference because I wasn't... My illegal possession of ammunition was not involved in another offense. He's saying, don't even apply the cross-reference. So don't even go over to 2X1.1. A or B. Because he's also arguing in that same section that a four-level enhancement for knowing or should have known that the ammo was going to be exported should not be applied under the 2K provision. So the focus of his objection is not on the three-level reduction at all. I guess that's one way to look at it. The other way to look at it is he's covering all the bases. But when invited by the district court, he probably should have said something at the sentencing hearing. Because he did make an effort, as sentencing closed, he made an effort to bring up the minor role reduction. But he didn't raise the three-level, the three-level reduction for attempt. So, and again, if you look at the Wascom considerations, the defendant's conduct here clearly furthers the offense, whether it's conspiracy or attempt to illegally export ammunition. Yes, we acknowledge there's a significant step that remains. That is, delivery of the ammunition. But just because that hasn't occurred doesn't mean that the reduction is automatic. Instead, you weigh the acts that have been completed versus the acts that remain. Again, we think that both quality and quantity of acts that have been completed weigh more heavily than the acts that remain. And the temporal frame of the conspiracy here has been established, unlike it had been in Soto. We know this is a same-day offense. We know he's just waiting for that phone call to take the ammunition to the Whataburger. And for those reasons, we think this case is distinguishable from Soto and that it was correct for the district court not to apply the three-level reduction. And if there's no other questions from the court, I'll rest on the briefs. Thank you, Ms. Mavis. Thank you. Mr. Martin, you have five minutes on rebuttal. Thank you. I'd first like to address the government's position that this had to have been a same-day offense. Well, I would like to call your attention to the field interview where, when he was asked, he said that Malchibo always takes one or two days to call. That's at row 269. And at row 268, he basically said that sometimes he'll call tomorrow. So he said—what did he say? He said the agent asked him, is the GOAT waiting for you now so you can turn them in? And Mr. Rodriguez says, no, no. Well, sometimes he calls me today, calls me tomorrow, or speaks to me past. So we're not exactly certain here. The government certainly hasn't shown that it's necessarily going to happen on this exact day, even though it may have happened on the same day in the past at least once. We know that there was one day where El Chivo called three hours later. There was another—in the transcript, it says that the second time, he went later to deliver the ammunition, but it's unclear what day. It might have been the next day. We don't know. And the government certainly hasn't shown it. The government says it doesn't know how long it would take Mr. Rodriguez to go and pick up the ammunition from the friend's house. Well, it's their burden, again, to show that the—what the correct— that this decrease should not apply, and they could have presented evidence of that in the district court, but they didn't. This letter to the district court that Mr. Rodriguez wrote where he said that he was supposed to receive a call after—you know, at Academy. Well, if you look at the letter, Mr. Rodriguez is not the most articulate man, and of course he was expecting a call at some point. But again, he was waiting for a call from the moment he picked it up, but it might be tomorrow. He doesn't know. As he said in other places in the field interview, it could be tomorrow. And lastly, I'd like to point out on the preservation issue that government says that defense— his retained defense counsel probably should have said something at sentencing, been a little more persistent about this part of the written objection. Well, a similar thing happened in United States v. Neal, which is cited in our brief. In Neal, the issue was whether simple possession of drugs was a controlled substance offense for purposes of the guideline enhancement for armed career criminals. The district court construed Neal's written response as objecting solely to the proximity of the drugs, which is whether the firearms found in the bedroom were possessed in connection with the drugs that were found elsewhere in the apartment. But the court nonetheless found that the error was preserved by the written objection and said, while Neal certainly could have been more clear and more persistent in raising an objection based on the definition of controlled substance offense, his actions were sufficient to preserve the error. Neal also said that for preservation purposes, we have never required a defendant to reiterate an objection simply because the trial court misconstrues or fails to respond to the original. The central inquiry is the specificity and clarity of the initial objection, not the defendant's persistence in seeking relief. And, Your Honors, with that, those are the only points I have to make. I'll rest on my briefs unless you have further questions. Thank you, Mr. Bartlett. Thank you.